UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

The REPUBLIC OF COLOMBIA, et al.,

       Plaintiffs,

       v.                                            <u>MEMORANDUM & ORDER</u>
                                                        04-CV-4372 (NGG)

DIAGEO NORTH AMERICA INC., et al.,

       Defendants.
----------------------------------------------------------X

GARAUFIS, United States District Judge:

       On June 19, 2007, this court issued a Memorandum & Order (the "Order") granting in part and denying in part Defendants Diageo North America Inc., United Distillers Manufacturing Inc., Seagram Export Sales Company Inc., and Pernod Ricard USA LLC's (collectively, "Defendants") motion to dismiss the Complaint. Defendants have requested that this court, pursuant to 28 U.S.C. § 1292(b), certify the Order for immediate appeal and stay the proceedings pending the resolution of Defendants' application and appeal process. The Republic of Colombia, Colombia's Capital District of Bogota, and a number of Departments of the Republic of Colombia (collectively, "Plaintiffs") oppose these requests. Defendants' request for a certificate of appealability is granted, but their request for a stay of discovery and all other proceedings is denied.

**I.    LEGAL STANDARD**

       Under 28 U.S.C. § 1292(b), a district court may certify a question for interlocutory appeal where (1) the decision to be appealed "involves a controlling question of law," (2) "as to which there is a substantial ground for difference of opinion," and (3) "an immediate appeal may

1

materially advance the ultimate determination of the litigation." Once the district court certifies an Order for interlocutory appeal pursuant to Section 1292(b), the Court of Appeals is free to accept or reject the interlocutory appeal. 28 U.S.C. § 1292(b). If the Court of Appeals accepts the appeal, it "'may address any issue fairly included within the certified order,' as 'it is the *order* that is appealable and not the controlling question identified by the district court.'" California Pub. Employees' Retirement Sys. v. WorldCom, Inc., 368 F.3d 86, 95 (2d Cir. 2004) (quoting Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 (1996)).

Whether to certify a question for interlocutory appeal is trusted to the sound discretion of the district court. Morris v. Flaig, No. 02-cv-5988, 2007 WL 1651854, at *2 (E.D.N.Y. June 6, 2007). In fact, "[d]istrict court judges have broad discretion to deny certification even where the statutory criteria are met." Id. (internal quotation marks omitted). Some courts primarily consider efficiency in determining whether to certify an order for interlocutory appeal:

> The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b). See Forsyth v. Kleindienst, 599 F.2d 1203 (3d Cir.), cert. denied, 453 U.S. 912 (1979). Because the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called "big" cases. See Bruce v. Martin, 712 F. Supp. 442, 445 (S.D.N.Y. 1989). However, the efficiency of both the district court and the appellate court are to be considered, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case.

In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997). As the Second Circuit has explained, interlocutory appeals typically create inefficiency for the Courts of Appeals: "it does not normally advance the interests of sound judicial administration or efficiency to have piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case, instead of having the trial judge,

who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case." Harriscom Svenska AB v. Harris Corp., 947 F.2d 627, 631 (2d Cir. 1991).

Efficiency, however, is not the only consideration, and district courts also consider the following factors in determining whether to certify a decision for immediate appeal pursuant to Section 1292(b):

> (1) the benefit of further factual development and a complete record on appeal, particularly in rapidly developing or unsettled areas of the law; (2) the time an appeal would likely take; (3) the need for a stay pending appeal and the effect on the litigation including discovery, that would result from a stay; and (4) the probability that other issues may moot the need for the interlocutory appeal.

Mayers v. New York Community Bancorp, Inc., No. CV-03-5837 (CPS), 2006 WL 2013734, at *9 (E.D.N.Y. July 18, 2006) (internal quotation marks omitted).

The fact that district courts have the power to certify questions for interlocutory appeal in no way suggests that interlocutory appeal should be the norm: "As we have repeatedly cautioned, however, use of this certification procedure should be strictly limited because only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (internal quotation marks omitted); Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996) ("Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment that generally prohibits piecemeal appeals."). One district court went so far as to analyze its past rulings on Section 1292(b) motions, concluding that it granted two out of twenty-three such motions over an eighteen year period. In re Lloyd's, 1997 WL 458739, at *3.

## II. DISCUSSION

Defendants argue that the Order ruled upon four difficult and close legal questions which meet the Section 1292(b) prerequisites and should be resolved through an interlocutory appeal: revenue rule, penal law rule, *forum non conveniens* and whether the elements of a RICO claim have been adequately pled. Plaintiffs argue that the three requirements for Section 1292 certification have not been met.[1]

First, Plaintiffs argue that the questions that are the basis for certification are primarily mixed questions of fact and law as opposed to pure questions of law. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Section 1292(b) Certification ("Pl. Opp.") at 4.) Plaintiffs appear to acknowledge, however, that "this court's decision to apply a 'continuum' approach [to its revenue rule analysis] resolved a question of law." (Id.) Clearly, the Order's analysis of the revenue and penal law rules required the court to dispose of pure questions of law. Whether the revenue rule bars recognition, consideration and application of a foreign revenue law—as opposed to ruling upon the validity of a foreign revenue law (Order at 23-29)—is a pure question of law. My determination that a foreign sovereign's claim calls upon a court to engage in the proscribed direct enforcement of a foreign revenue rule only when the sovereign is experiencing damages suffered in its sovereign capacity (id. at 17-22) is also a pure question of law. Similarly, the decision to construe the penal law rule as parallel to the revenue rule is a pure question of law. Finally, how Supreme Court and Second Circuit cases addressing

---

[1] The court need not consider whether the requirements for Section 1292(b) certification have been met for each every close legal issue addressed in the Order. Once the court determines that a single issue addressed in the Order satisfies the Section 1292(b) requirements, the court has the discretion to certify the Order for immediate appeal. Once the Order is certified for immediate appeal, if the Court of Appeals accepts the appeal, it is free to consider any issue raised in the Order. See California Pub. Employees' Retirement Sys., 368 F.3d at 95.

the RICO proximate cause requirement should be reconciled with each other is a pure question of law. The Order disposed of pure questions of law. There is no dispute that at least some of these pure questions of law are "controlling" within the meaning of Section 1292(b).

Second, Plaintiffs argue that there is not a substantial ground for difference of opinion as to the controlling questions of law that were addressed in the Order. (Pl. Opp. at 6-15.) The Second Circuit has "note[d] that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." Flor, 79 F.3d at 284. However, this element is satisfied where the "issues are difficult and of first impression." As a preliminary matter, it would be very unusual for this court to issue an Order that is 145 pages if no novel and difficult questions were presented. Several of the issues addressed in the Order were close and difficult questions about which courts could disagree. The revenue rule and penal law rule issues were very difficult. This largely results from the fact that there are so few decisions considering these doctrines. If there were numerous published decisions addressing these doctrines in a variety of contexts, the doctrines would be better developed, and it may have much easier to apply them in this case. In the Order, however, the court was required to consider not just questions of first impression with respect to these doctrines, but the court had to address significant legal and policy concerns that do not appear to have been considered in other revenue rule and penal law rule decisions. The novelty and complexity of the issues presented by the revenue and penal law rules motions give rise to a substantial ground for disagreement as to how these issues should be applied in this case. Further, determining whether the plaintiffs had adequately pled the proximate cause element of their RICO claim also presented close and difficult issues about which there is a substantial ground for difference of opinion. (See Order at 103-116.)

5

Third, Plaintiffs argue that an immediate appeal from the Order will not materially advance the ultimate termination of the litigation. (Pl. Opp. at 16.) Plaintiffs argue that proceeding with discovery at this time is the most efficient path to resolution of their claims. This is a "big" case that will require extensive and costly discovery involving multiple parties and third-parties in the United States and abroad. This discovery will be expensive. Meanwhile, Defendants have raised several defenses that present close and difficult questions. If Defendants were to prevail on even one of these defenses, the action would be dismissed in whole or in part, thus eliminating or significantly reducing the costs of discovery. As a result, permitting an interlocutory appeal will expedite this litigation. As discussed infra, however, staying discovery at this time is not in the interest of efficiently resolving this litigation.

The three elements of Section 1292(b) certification have been satisfied. As a result, this court has the authority to certify the Order for immediate appeal. The question becomes whether this court should exercise its discretion to permit an immediate appeal. An interlocutory appeal is appropriate in this case because it is the most efficient means of advancing or disposing of the litigation.

However, one factor weighing against an interlocutory appeal does warrant discussion. In considering the revenue and penal law rule issues, this court had to make predictions about the extent to which Plaintiffs' claims would require consideration of foreign laws and address conduct and effects that occur abroad. These issues may look very different after the parties have had an opportunity to complete fact and expert discovery. Plaintiffs may very well be able to develop factual and legal theories that minimize the extent to which foreign revenue and penal laws come into play.

Clearly, Rule 12(b)(1) of the Federal Rules of Civil Procedure requires the court to resolve factual disputes concerning jurisdictional issues at the earliest phases of the litigation. (See Order at 11-13.) Assuming *arguendo* that motions to dismiss a complaint on the basis of the revenue and penal law rules falls within the purview of Rule 12(b)(1), the revenue and penal law rule issues are far more difficult to resolve at the initial stages of litigation than is the typical jurisdictional issue. For instance, with respect to a Rule 12(b)(1) motion to dismiss for lack of personal jurisdiction, parties can easily conduct discovery and a court can efficiently hold a hearing on a defendant's contacts with the forum. The question of a party's contacts with the forum state is a discrete factual issue that can generally be addressed without regard to the factual and legal theories that may be advanced at later stages of the litigation. In contrast, whether a federal cause of action should be dismissed because it "indirectly" enforces a foreign sovereign's revenue or penal laws by calling upon a district judge or a jury to consider the nature and effect of such a law is a far more difficult question to answer at the early stages of a case.[2]

---

[2] Defendants argue that "the Revenue and Penal Laws Rules are intended to avoid not just the imposition of liability, but also the adjudication of claims because allowing the case to be adjudicated raises the separation of powers and sovereignty concerns that underlie the Rules." (Defendants' Reply Memorandum at 9.) At least to some extent, this is true. However, the precedential implications of dismissing this action on the basis of the revenue or penal law rules are of such significance that these issues are best resolved only after the factual record is complete. Further, in papers submitted to the Second Circuit, Defendants assert that the Order's ruling on the Revenue and Penal Law Rules is immediately appealable under Cohen v. Beneficial Industrial Loan Corporation, 337 U.S. 541 (1949). (Affidavit of Robert H. Smit in Support of Defendant-Appellants' Unopposed Motion to Adjourn the Briefing Schedule or Hold the Appeal in Abeyance Pending Resolution of (1) the Pending Motion to Certify the Order Below for Immediate Appeal Pursuant to 28 U.S.C. § 1292(b) and (2) This Court's Decision on the Pending Motion to Dismiss This Appeal ¶ 5.) In Cohen, the Court stated that the version of 28 U.S.C. § 1292 in effect at that time "allow[ed] appeals [ ] from certain interlocutory orders, decrees and judgments . . . when they have a final and irreparable effect on the rights of the parties." Id. at 545. Of course, this court expresses no opinion as to whether, absent certification pursuant to Section 1292(b), the Second Circuit has jurisdiction over the issues raised in the Notice of Appeal.

The fact that these issues are difficult to resolve at this early stage of the litigation weighs heavily against an interlocutory appeal in this case. As the Order discusses in some detail, there is very little case law on the penal and revenue law rules. There is even less case law addressing whether these rules preclude actions that do not seek back taxes. Again, as discussed in the Order, if the revenue and/or penal law rules are read to preclude the claims alleged in this case, the consequences could be tremendous. In a time of increasing economic globalization, a jurisprudential rule which precluded federal courts from considering or evaluating the effects that foreign taxes have on a market could prevent federal courts from hearing a significant number of antitrust, RICO, and other commercial cases. (See Order at 42 ("There are federal causes of action that, even if brought by a private party, would require a federal court or jury to make the same analyses of the effects of Colombian liquor taxes that may very well need to be made in this case. For instance, if a liquor manufacturer brought an antitrust claim against another manufacturer alleging that the defendant had monopolized an international liquor market that included Colombia, a federal court would have to reach conclusions about the nature of Colombian liquor sales, including elasticity of demand, effects of Colombian taxes, and the extent of evasion of Colombian taxes.").) Because the stakes are so high, in an ideal world, appellate review of the revenue and penal law rules aspects of the Order would not occur until the factual record was fully developed. In this case, however, Plaintiffs' claims may fail on a number of different grounds and the costs of discovery will be significant. As a result, the Court of Appeals should have the opportunity to determine whether it wishes to consider at this time the issues addressed in the Order.

I decline, however, to stay discovery or any other proceeding pending the disposition of the appeal. Although Plaintiffs have not explicitly opposed a stay, Plaintiffs have objected to

any further delay of discovery in this case. (Pl. Opp. at 16.) Above all else, this case was originally filed in 2004, and discovery has yet to begin. The majority of the delay in the disposition of this case results from the fact that the parties stipulated to a stay of this action pending the Second Circuit's decision in a case addressing the revenue rule, <u>European Community, et al. v. RJR Nabisco, et al.</u>, No. 01 Civ. 5188. (March 17, 2005 Stipulated Scheduling Order (Docket No. 32).) In doing so, the parties believed that a stay might be the most efficient way to dispose of this case. After all, if (1) the Second Circuit resolved the revenue rule issue in favor of the defendants in <u>European Community</u> and (2) this case fell within the holding of <u>European Community</u>, then this action would most likely have been dismissed with minimal litigation costs. Defendants agreed to this stay knowing full well that this case raised penal law rule, *forum non conveniens*, and RICO issues that were anything but simple. Defendants were free to press these other legal issues at the time the <u>European Community</u> case was pending. Defendants decided that they should wait to litigate such defenses and Plaintiffs agreed. Given this history, it simply is not reasonable for Defendants to ask that discovery in this case be stayed pending a second review by the Court of Appeals of issues relevant to this case. If this court were to stay discovery at this time and the Court of Appeals accepted and then denied Defendants' interlocutory appeal, it might be 2009 before discovery began on this case—which was filed in 2004. As a result, I decline to stay discovery

or any other proceeding in this case.[3] Defendants are, of course, free to seek a stay from the Court of Appeals. See 28 U.S.C. § 1292(b).

### III. CONCLUSION

For the reasons set forth above, Defendants' request that this court certify pursuant to Section 1292(b) its June 19, 2006 Memorandum & Order for interlocutory appeal is granted. Defendants' motion for a stay of discovery and all other proceedings pending disposition of the interlocutory appeal is denied.

SO ORDERED.

Dated: September 7, 2007  /s/ Nicholas G. Garaufis
 Brooklyn, N.Y.  NICHOLAS G. GARAUFIS
  United States District Judge

---

[3] It is unclear from the Plaintiffs' motion papers whether they would consent to a stay of discovery and/or other proceedings in the event this court granted Defendants' Section 1292(b) motion. If all parties consent to a stay of discovery and/or other proceedings, the parties are free to submit a joint application requesting such relief. If such a joint application is submitted, the court will consider it at that time.