# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

September 28, 2010

By Hand Delivery and Electronic Submission

Honorable Viktor V. Pohorelsky,
    United States Magistrate Judge,
        United States Courthouse,
            Eastern District of New York,
                225 Cadman Plaza East,
                    Brooklyn, New York  11201.

            Re:    *Republic of Colombia, et al.* v. *Diageo North America Inc., et al.*;
                       Case Number 04 CV 4372 (NGG) (VVP)

Dear Judge Pohorelsky:

        We write in advance of the September 29 conference with Your Honor with respect to the status of the parties' responses to interrogatories regarding preservation of relevant electronically stored information ("ESI").

        As we describe in more detail below, Plaintiffs' responses have revealed that no document hold notices were sent to them by their counsel until at least three years after Plaintiffs commenced their action; that, even then, the notices did not necessarily reach all the Plaintiffs; that no Plaintiff contends that the notices or their content were disseminated to document custodians, and that no Plaintiff took any affirmative steps designed to prevent the destruction of documents in connection with the litigation until April 2010, six years after the litigation was commenced.  Furthermore, twelve Plaintiffs did not respond at all, despite the clarity of this Court's order.  Finally, Plaintiffs have once again failed to provide any custodian-specific ESI information, even though Plaintiffs:  (i) identified more than 2,200 custodians in March 2010; (ii) represented to this Court on two occasions that because of Plaintiffs' failure to put in place any system-wide preservation efforts, it would be necessary to contact individual custodians to determine what ESI is actually available; and (iii) sought and received two extensions in order to comply fully with this Court's Order.  We respectfully submit that this large scale and ongoing violation of fundamental preservation obligations requires severe sanctions.

## Prior Proceedings and Rulings Regarding Preservation

After Plaintiffs' former counsel withdrew in December 2009, and in light of events surrounding that withdrawal, Defendants asked the Court to order that each Plaintiff be required to demonstrate that it had "undertaken reasonable steps to ensure that ESI has been properly preserved and provid[e] specific and detailed information regarding ESI, including a description of relevant systems and/or information possessed by relevant custodians." (Defendants' Response to Motion to Withdraw as Attorney, December 16, 2009, Dkt. No. 200, at 9.) The Court granted this request, ordering Plaintiffs to "respond to the Defendants' 2008 proposal concerning [ESI] and [to] provide 'inventory' information concerning the ESI available for all departments." (Order of January 25, 2010, Dkt. No. 203.) At a hearing on January 25, 2010, Plaintiffs' current counsel agreed that Plaintiffs would provide "inventories of our electronically stored information plaintiff by plaintiff" by March 15, 2010. (Transcript of the January 25, 2010 Hearing, 6:2-3.) William Reid, on behalf of Plaintiffs, acknowledged that "for those [Plaintiffs] who are unable to comply, then I assume the Defendants' position will be that you should remove them from the case." (*Id.*, 6:7-9.)

The ESI discovery that Plaintiffs provided on March 15 was deficient in several respects. Most notably, Plaintiffs provided no information on what efforts Plaintiffs had undertaken to preserve ESI or what ESI was "available" for each Plaintiff. In light of this failure, Defendants moved to compel Plaintiffs to disclose what ESI had actually been preserved. In their response to that motion, Plaintiffs admitted that "we are not in a position to make a blanket representation concerning the method for retention of email," and that "[t]o locate and produce retained email, it will be necessary, in some cases, to contact individual custodians to determine what email has been saved on individual computers or printed out in hard copy form." (Plaintiffs' Response in Opposition to Defendants' Motion to Compel, April 7, 2010, Dkt. No. 231, at 3.) Plaintiffs nonetheless maintained that "all Plaintiffs should be required to do is represent to the Court that prior counsel informed Plaintiffs of the document-preservation obligations imposed by United States law." (*Id.*, at 4.) To that end, counsel attached the Declaration of Nohora C. Viloria Fonseca, the Secretary General of the National Federation of Departments from May 1, 2005 to the Present. (*Id.*, Ex. A.) Ms. Viloria Fonseca declared, under penalty of perjury, that litigation hold notices were distributed to "each Department" in a letter from counsel dated October 29, 2007, that counsel had reiterated these instructions on May 15, 2008 and that this was communicated again to Plaintiffs on May 21, 2008. (*Id.*, Ex. A, ¶¶ 6-8.) Counsel claimed that this declaration "confirms the receipt of written notifications from prior counsel." (Dkt. No. 231, at 4.) Yet, as discussed herein, a review of the information provided by the responding Plaintiffs demonstrates that there is scant factual support for this claim.

At the motion hearing on May 4, 2010, this Court stated "I suspect, and you suspect now, that Plaintiffs really didn't do anything or take any serious steps to preserve electronically stored information." (Transcript of the May 4, 2010 Hearing, 2:19-21.) After discussing with counsel potential remedies ranging from adverse inferences and limitations on discovery to complete dismissal (*id.*, 4:1-6:2), the Court noted the "dearth of information about what was done to preserve [Plaintiffs' records]"

(*id.*, 19:22-23) and ordered the parties to "serve interrogatories on each other within seven days concerning the preservation and availability of ESI with respect to all parties and [to] respond within 30 days." (May 5, 2010 Order, Dkt. No. 237.) On May 11, 2010, Defendants served interrogatories on all Plaintiffs and all Plaintiffs served interrogatories on Defendants.

### Plaintiffs' Responses to Defendants' Interrogatories Demonstrate a Pervasive Failure to Preserve

Plaintiffs were unable to file responses within the time frame required by the Court, and thereafter all Plaintiffs sought and obtained two extensions. (Dkt. Nos. 239, 242.) On September 17, 2010, the extended deadline for the responses, Defendants' responded to Plaintiffs' ESI interrogatories, providing extensive information about the preservation efforts, custodians, and computer systems, not just of the named Defendants, but of affiliated non-Defendant entities as well.[1] By contrast, only ten out of twenty-four Plaintiffs responded to Defendants' ESI interrogatories. As we outline below, these responses (and non-responses) confirm this Court's suspicion that Plaintiffs have disregarded and continue to disregard their discovery obligations under U.S. law. First, despite this Court's refusal to allow a response "in stages" (May 4, 2010 Hearing Transcript, 34:1-34:18), twelve Plaintiffs[2] failed to respond, with the explanation that they "contemplat[e] . . . filing motions seeking to withdraw their claims, without prejudice to renewing the claims should the current determination seeking the so-called 'revenue rule' be changed." (Letter from William Reid to Samuel Danon, *et al.*, Sept. 17, 2010, attached hereto as Exhibit A, at 2.)[3] Two other Plaintiffs, who purportedly seek to

---

[1] In order to limit the size of this submission, Defendants have not attached their interrogatory responses as exhibits to this letter, but will submit them in paper or electronic form if the Court wishes.

[2] These defaulting Plaintiffs are the Republic of Colombia itself, the Departments of Amazonas, Arauca, Cordoba, Guaviare, Porte de Santander, Putumayo, Risaralda, San Andres y Providencia, Sucre, Vichada, and the Capital District of Bogota.

[3] Defendants will oppose any motions to withdraw without prejudice and maintain that regardless of their future status as parties or non-parties, all Plaintiffs should be treated as parties for purposes of discovery. **Plaintiffs' announcement that the Republic of Colombia seeks dismissal and thus will not provide discovery is particularly troubling, in light of the fact that the Republic is charged with the duty of taking steps to preserve documents of all branches and agencies of the Colombian government that have documents relevant to the litigation,** *e.g.*, Customs, the Armed Forces, the Central Bank, law enforcement agencies, and the courts. (*See also* Defendants' Motion to Compel, April 18, 2008, Dkt. No. 142, Ex. D (Examples of Documents Under the Control of the Republic Critical to the Defense).) An additional matter to be addressed in the context of

*(footnote continued)*

remain parties to the litigation, Narino[4] and Valle del Cauca, also failed timely to respond, allegedly due, respectively, to "unforeseen logistical issues" and "disruption in government." (Letter from Reid to Danon, Ex. A, at 1-2.) No extension was sought for any of these fourteen defaulting Plaintiffs. This is unacceptable. Having chosen to litigate in this forum, Plaintiffs are bound by its rules. *See, e.g., Reino de Espana v. Am. Bureau of Shipping*, No. 03 Civ. 3573 LTS/RLS, 2006 WL 3208579, at *6 (S.D.N.Y. Nov. 4, 2006).

The responses of those Plaintiffs who did respond to Defendants' Interrogatories are deficient. For example, **no Plaintiff has yet provided any custodian-specific information, despite the fact that Plaintiffs' counsel had previously acknowledged on two separate occasions that this is the key to understanding what actually was preserved and thus what was required by the Court's January and May 2010 Orders**: "I can't tell Your Honor honestly how significant those holes [in email preservation] will turn out to be once [sic] we actually identify relevant custodians." (Transcript of the May 4, 2010 Hearing, 31:21-23; *see also* Plaintiffs' Response in Opposition to Defendants' Motion to Compel, April 7, 2010, Dkt. No. 231 ("[t]o locate and produce retained email, it will be necessary, in some cases, to contact individual custodians to determine what email has been saved on individual computers or printed out in hard copy form.").) Plaintiffs' responses offer no reason for their failure to provide this information. (*See, e.g.*, Antioquia ESI Responses, attached hereto as Exhibit B, Response to Interrogatory No. 14.) ("Plaintiff objects to providing information identifying custodians and their respective e-mail accounts at this time, but is willing to meet and confer on this issue.")[5] Under any reasonable construction of Defendants'

---

(*continued*)
    any effort by the Republic to be dismissed should be Plaintiffs' representation that the Republic, regardless of its status as a party, would provide Defendants "with [the discovery] they wanted as long as it was fairly reasonable stuff." (Transcript of the May 29, 2008 Hearing, 30:13-19.) If Plaintiffs fail timely to bring their purported motions to dismiss, Defendants will move for dismissal with prejudice. Fed. R. Civ. P. 41(b).

[4]    Narino finally filed its Objections and Responses to Defendants' First Set of Interrogatories Regarding Preservation of Documents on September 24, 2010 -- a week after the date set by this Court's order. Valle del Cauca has still not responded at the time of filing of this letter.

[5]    Plaintiffs' demand to meet and confer is no excuse for their wholesale failure to respond to this central inquiry. As described above, Plaintiffs have long acknowledged that custodian-specific information is essential to understanding whether documents have been preserved -- and Plaintiffs themselves produced a list of potential custodians six months ago. Defendants then constructed their core interrogatories around the list of individuals "who may have created potentially relevant ESI" that was supplied by Plaintiffs in March 2010. (Composite Exhibit A to Defendants' Motion to Compel, March 29, 2010, Dkt.

(*footnote continued*)

Interrogatories, Plaintiffs should have provided information about custodians. *See* Local Civil Rule 26.7.

The most significant failures, however, are those revealed in the responses that actually were provided. These responses make clear that **the first time any litigation hold notice was sent by counsel to Plaintiffs was on October 29, 2007, three years after the litigation began.** And despite the fact that Plaintiffs' current counsel submitted a sworn declaration from a Colombian government official stating that this notice was sent to "each Department," not all departments can confirm receipt. (*See, e.g.*, Atlantico ESI Responses, Response to Interrogatory No. 10, attached hereto as Exhibit C.)[6] The fact that Plaintiffs failed even to retain the litigation hold notice severely undermines their claim that "important" documents are printed and preserved, even in the absence of a litigation hold. Even more important, **there is no indication in any of the interrogatory responses of any Plaintiff that the October 29, 2007 hold notice or the subsequent May 15 or 21, 2008 hold notices, or their contents, were disseminated to anyone other than the governor of a Department.** ((*See, e.g.*, Antioquia Responses, Ex. B, at Exhibit 1) (listing hold notice recipients).) Indeed, some departments (Bolivar, Caldas, Caqueta, Choco, Narino, Santander and Tolima) were unable to identify a single recipient of the October notice, leaving it completely unclear on what basis these Plaintiffs can confirm receipt at all. Finally, **no Plaintiff indicated that it took any steps whatsoever to comply with any of those notices.**

Although this case was filed in October 2004, Plaintiffs did not issue a litigation hold until October 2007. Beginning in 2007, Plaintiffs' own conduct shows that though they were well aware of their preservation obligations, they willfully disregarded them. Thus, in 2007, despite Plaintiffs' own stark lack of effort to preserve documents, Plaintiffs were lecturing Defendants on their document preservation obligations, noting "that regardless of any further action by the Court all parties are under an obligation to preserve records currently in their possession" and noting that "electronic evidence can be both fragile and vulnerable to inadvertent destruction." (*See, e.g.*, Letter to Mary McGarry from Kevin Malone, dated December 5, 2007, at 2 and Draft

---

(*continued*)
No. 230, at 6.) To do nothing but propose a meeting at this late date is not a good faith response.

[6] Not only are several of the responding Plaintiffs (Atlantico, Antioquia, Caqueta, Caldas, Huila, Narino and Tolima) unable to confirm receipt of the May 2008 hold instructions to which Ms. Vilora Fonseca referred, but counsel seek now to distance themselves from her declaration, which they themselves procured. (*See, e.g.*, Atlantico Response to Interrogatory No. 12, Ex. C) ("Nohora C. Viloria Fonseca is a non-lawyer who provided a declaration describing, among other things, her observation of Colombian customs and practices for preserving departmental documents. The Department has no detailed knowledge of the basis for Ms. Viloria Fonseca's statements.")

Preservation Order, at 2, attached hereto as Exhibit D. *See also* Plaintiff-Appellees' Opposition Memorandum to Motion to Stay Pending Appeal, Oct. 25, 2007, attached hereto as Exhibit E, at 5 (discussing the "absolute importance of currently obtaining and preserving evidence"); Plaintiffs' First Request to Produce to Defendant, Diageo plc, March 3, 2008, attached hereto as Exhibit F, Requests 163-65 (setting out detailed demands for preservation of various electronic media).) Yet, each and every responding Plaintiff now admits that it failed to preserve its ESI in even remotely the same manner as it demanded of Defendants. (*See, e.g.*, Antioquia Response, Ex. B, Responses to Interrogatory Nos. 20 and 21.) Plaintiffs' demand that Defendants take very specific steps to preserve ESI while completely ignoring their own obligations demonstrates a willful disregard of the duty, imposed upon all those who choose to litigate in the courts of the United States, to preserve evidence.

Nor did Plaintiffs' failures end with the appearance of new counsel. It now appears that Plaintiffs' first real efforts at systemic preservation did not occur until after Plaintiffs had already responded to this Court's January 25, 2010 Order. Despite the clear concerns that both Defendants and the Court expressed about Plaintiffs' preservation efforts, Plaintiffs' new counsel waited several months after retention before even beginning to address these problems. For example, while Mr. Reid and his colleagues claim to have spent substantial time in Colombia in February and March of this year dealing with ESI issues in response to this Court's January 25, 2010 Order, **counsel did not even then send out any hold notices until sometime between April and July of this year**. Nor did counsel -- despite learning that evidence was not being preserved -- ensure at that time that Plaintiffs put in place any systemic preservation efforts (for example, by disabling automatic deletion functions on email or by stopping the recycling of backup tapes when it became clear live data was not available). (*See, e.g.*, Antioquia Responses, Ex. B, Response to Interrogatory No. 1.)

The egregious consequences of Plaintiffs' failure to take the necessary steps to ensure preservation of documents until six years after litigation commenced can only be understood by examining what the responses reveal about Plaintiffs' ordinary document retention practices. For example:

- The Caldas *licorera* destroyed all of its email created prior to 2008 and took no steps to preserve the email from 2008 to 2010 until April 2010. (Appendix A to Caldas ESI Responses, attached hereto as Exhibit G Response to Interrogatory No. 5.)

- In Cundinamarca, the *licorera* did not start preserving emails on a system-wide basis until March 2010. (Appendix A to Cundinamarca's ESI Responses, attached hereto as Exhibit H, Response to Interrogatory No. 5.) And on May 26, 2009, a flood destroyed the Cundinamarca *licorera*'s file server. Because no backups had been created, all of this data was lost. (*Id.*)

- The *licorera* in Valle del Cauca failed to preserve email on a system-wide basis until June 2010, meaning that any emails deleted prior to that date are

> irretrievable. (Industria del Valle del Cauca ESI Responses, attached hereto as Exhibit I, Response to Interrogatory No. 5.)
>
> - In the Department of Antioquia, from 2000 to 2009, email inboxes were limited to 16 megabytes, and users were forced to delete email once they reached that modest limit. This practice remained in place until June 18, 2010. (Antioquia Responses, Ex. B, Response to Interrogatory No. 5.)[7]

Plaintiffs' self-serving declaration -- that "users have generally followed, and continue to follow, a practice of printing and retaining important documents, including correspondence, consistent with the greater importance placed on hard copy documents in Colombia" (*see, e.g.*, Antioquia Responses, Ex. B, Response to Interrogatory No. 4.) -- is beside the point. Even if it were true, this would not mean that all relevant documents have been preserved, and it certainly would not excuse Plaintiffs' complete failure to take steps to preserve ESI through six years of litigation. Plaintiffs' interrogatory responses show, however, that in many cases this representation is **not true**. Plaintiffs produced document retention "tables" showing that many categories of paper documents are preserved for fewer than ten years (so would not go as far back as 2000), and many were destroyed after as few as three years (so would only go back to 2007).[8] Plaintiffs are not in Colombia, they are before this Court, in the United States of America, and they were and are required to conform their conduct to the rules that attach to those who choose to bring lawsuits in this country. *See, e.g., Reino de Espana*, WL 3208579, at *6.

---

[7] According to Plaintiffs, Antioquia, Caldas, Cundinamarca and Valle del Cauca "represent 90% of the legitimate market" for liquor products in Colombia. (May 4, 2010 Transcript, 34:4-5.)

[8] Defendants are still reviewing these retention tables, which were produced in Spanish with no translation, but examples of categories of documents that were destroyed after only **three** years include, for the Cundinamarca *licorera*: (i) all documents regarding employees' incomes, retention rates, overtime and other issues (code # 1300000); these documents would be relevant to show mismanagement and possible corruption as causes of lost sales; (ii) all documents regarding contracts declared void relating to market research and studies of opportunity and convenience (code #1200002); these documents would be relevant to causation to the extent they show the department failed to conduct necessary market research to promote adequately their product sales; (iii) 90% of documents regarding complaints, claims, and suggestions (code nos. 1103000 and 150000); complaints regarding corruption, product quality or other comments regarding changing consumer preferences would be relevant to show other causes for Plaintiffs' lost sales; and (iv) 90% of documents regarding payments and deductions to suppliers and contractors; these documents would be relevant to whether mismanagement or corruption were causes of lost sales.

### Plaintiffs' Failure to Preserve Mandates Sanctions

Plaintiffs' willful disregard of their obligation to comply with U.S. discovery rules mandates severe sanctions. Indeed, the failure to take any meaningful steps to preserve documents throughout six years of litigation is grounds for dismissal with prejudice of this entire action. Defendants of course cannot know exactly what relevant documents Plaintiffs have destroyed over the years, but it is by this point clear that such spoliation has occurred. The evidence of gross failure to issue hold notices for years after the litigation commenced -- combined with the available information on the haphazard and inadequate document retention policies that governed preservation in the absence of an effective hold -- is more than sufficient to presume relevance and prejudice, and to shift to Plaintiffs, the despoiling parties, the burden of showing how and to what extent the evidence sought by Defendants has been preserved. One of the primary factual issues in this case is whether there is, as alleged, a causal link between the alleged conduct of Defendants and the shrinking market share for Plaintiffs' products in Colombia. Although Plaintiffs maintain that their alleged injury and damages were caused by Defendants' purported money laundering, Defendants have long made it clear that they will seek to develop evidence, primarily from Plaintiffs' own documents, that any lost profits were caused by, *inter alia*, Plaintiffs' mismanagement of their *licoreras*, Plaintiffs' corruption, changing consumer preferences, and Plaintiffs' policies that encourage, or at least do nothing to deter, smuggling. **Indeed, Judge Garaufis has acknowledged that "one of the primary factual issues in this case will be the extent to which Plaintiffs can prove that their lost sales were caused by Defendants' money laundering as opposed to some other cause."** (June 19, 2007 Order, Dkt. No. 87, at 44.) It is highly unlikely that Plaintiffs' employees printed out and retained emails relating to their corporate mismanagement, their involvement in illegal activities, or their government's failure to enforce its own laws. Indeed, Plaintiffs' interrogatory responses show that -- contrary to Plaintiffs' protestations -- relevant paper documents, as well as ESI, were destroyed. Defendants will be prejudiced by this unavailability of evidence.

Defendants therefore intend to move for dismissal of this action on the basis that from the existing record, the evidence of spoliation calls for the most severe available sanction. In the alternative, Defendants will seek to limit merits discovery and any evidence to be presented in the case to the period after an adequate hold notice was issued and disseminated and meaningful preservation efforts were undertaken: the summer of 2010. Defendants will also ask the Court to draw adverse inferences against Plaintiffs as a result of their spoliation. Finally, Defendants will oppose any attempt by any Plaintiff to seek, at this late date, dismissal without prejudice. All Plaintiffs who opted out of compliance with this Court's May 5 Order should be dismissed with prejudice and imposition of costs, and dismissal should be conditioned on the requirement that the dismissed Plaintiffs continue to be treated as parties for purposes of

discovery. *See, e.g.*, *Hudson Engineering Co.* v. *Bingham Pump Co.*, 298 F. Supp. 387, 389 (S.D.N.Y. 1969). Defendants are prepared to move expeditiously on this matter and look forward to discussing a briefing schedule with the Court.

                                                                   Respectfully yours,

                                                                 /s/ Philip L. Graham, Jr.
                                                                 /s/ Samuel A. Danon
                                                                 /s/ Peter J. Kahn

(Attachments)

cc:    counsel of record (via ECF and email)